Case numbers 253329 and 263029, USA v. Paul Spivak Oral arguments not to exceed 15 minutes per side Mr. Robinson, you may proceed for the appellant May it please the court, Emmett Robinson on behalf of appellant Paul Spivak and I would like to reserve four minutes if I could That sounds good Paul was a defendant in a sweeping yet vague and amorphous securities fraud prosecution He was acquitted on 29 of 32 counts at trial, including all substantive counts of securities fraud But was convicted on the remaining three counts Today we ask this court to reverse those three convictions Following this unusual split verdict, Paul was to be tried in a second phase of the same trial on seven other counts He pled guilty to these counts under extraordinary circumstances And then afterwards immediately sought to withdraw his pleas The trial court wrongly refused his request and we ask this court to remedy that error today as well Now before I get into the substance of my argument, I want to address a potentially thorny procedural issue In our opening brief, we had argued that the district court erred when it denied Paul's motion to dismiss the phase two counts The government responded by pointing out rightly that typically when a defendant pleads guilty After that point they have waived appellate rights to any preceding error unless they've expressly reserved them And obviously they were not reserved here Now in reply, we conceded the point in part but we noted that the error was still relevant to the plea withdrawal issue We also said, frankly I also said, that the refusal to dismiss the phase two counts wasn't quote directly reviewable And thus isn't an independent basis for reversal, end quote And I need to clarify that statement So the failure to dismiss the phase two counts isn't directly reviewable standing on its own As I said there, it wasn't independently reviewable In light of the guilty pleas But if this court concludes as we submit that it should That Paul should have been allowed to withdraw those phase two guilty pleas Then it can and should reach the merit of our argument regarding dismissal of those counts In other words, as stated in the reply, the phase two dismissal issue isn't independently reviewable But I want to clarify and correct the reply brief It is reviewable in conjunction with the reversal on the plea withdrawal issue So you're saying we review that if we determine that he should have been allowed to withdraw his guilty plea We then consider that issue Exactly, your honor Did the district court consider that issue? The district court did not consider that issue because the order was inverted there So why would we do that? If we just assume you win the plea issue Why won't we just remand it and let the district court do it in the first instance? That was what I thought initially frankly But then what troubled me is that the time has passed to file a motion to dismiss in the trial court So if it is hypothetically remanded Obviously there's either going to be plea negotiations Or maybe they drop the case Or there would be a trial And if we came back up to you on appeal then It's not clear to me that we would then have a right to appellate review The second bite of the apple on the motion to dismiss So that's why I think it is before you now Under 12C, theoretically we could go back down We could ask the court to grant us leave to renew that motion to dismiss And then come back up Frankly, I haven't been able to find case law on the point That's why I said it's kind of thorny But I wanted to raise it now And I was, to put it kindly to myself Less than clear in the reply So I wanted to make that clear Can I ask you about your phase one portion And the $10,000 wire fraud count Why wasn't there sufficient evidence? Presumably they proved When viewing the evidence in the light most favorable to the government They proved the conspiracy They proved the fraud And they had the testimony indicating That the $10,000 was from Malian's sales stock And then they had the text Why isn't that, when you take all that together Viewing it in the light most favorable to the government Sufficient for, I think it's count 27 You're right, it is count 27 So at least two reasons, your honor So first is, as we pointed out in our opening brief And the government did not have a rejoinder to this In that exhibit, exhibit 27 Which is what evidences the wire fraud count 27 There were two $10,000 transfers On that exact same date So we don't know which one was from Malian And the law, this court has said I think it was most recently in Morrison Quoting the old Saunders case That the government must present more than just reasonable probabilities So 50-50 Weren't the two $10,000 Now I'm blanking But I thought they were different in kind One was a deposit and one was a wire Thank you That's correct, that's correct But the texts do not designate, say Malian texted me That he's, didn't say Malian wired me $10,000 And that was for the stock So in other words There's nothing to indicate that the other deposit came from that But more importantly I don't want to get lost in the weeds there More importantly There is no fraudulent scheme at issue On September 30th of 2016 This was, as all acknowledge now There was confusion at one point in the trial court But as all acknowledge This was having to do with free trading stock Free trading stock That Paul Spivak never owned That the proceeds of which never went to him And there was no fraud associated with that free trading stock at that time That's one of the problems with this whole prosecution There was so much thrown in And there was no coherent theory ever adopted The money went to the company That's right Okay Are you saying you can't have a fraudulent scheme That involves money going to the company? You could, but it's a peculiar fraudulent scheme Where the company raises money by selling By having someone sell its stock And then revert that money to them Because that's the whole purpose of issuing stock in the first place On the other hand If there was something fraudulent that had occurred here For instance, if there was evidence in the record That they had lied to people on the open market About it at this time And that caused the sale I'm not saying that you could never have a fraud scheme For free trading stock But there is no evidence at this time in the record The government has pointed to none in its brief Or below All it can say is that Paul was involved in a scheme To have people sell this And to kick back the money to the company But using the words scheme and kickback Are not facts that are sufficient to sustain a conviction there So Count 27 really is the key to this Phase 1 But I thought Malian was banned And Spivak used him to bring in investors And sell stock he gave to Malian Right? Go ahead That is not correct So Spivak never gave any stock to Malian These were free trading shares that he didn't own Spivak? I thought that either Spivak or the company Arranged for Malian to get shares Right? So two previous owners of the reverse merger company LXRT Held these free trading shares So Paul was the intermediary Who said hey Malian you should buy these And sell them and give us some of the money For it to help run the company So they weren't held by Paul They weren't held by the company They were held by these other owners And they were free trading But even if that is the case And even if he was banned There's no fraud involved These are free markets These aren't the restricted shares That's a totally different situation At this point these wires 27 and 28 Those are free trading shares So the allegation is that They were sold on the free market Now the government also says Oh this inflated the price Well that's an unusual allegation Because buying inflates prices Sales don't inflate Selling brings prices down And either way the allegation is It's artificial inflation But there's nothing in the record To indicate that there was any Artificial inflation at that time Sure years later you So you're stressing I'm trying to understand That on the date in question It preceded the buy and hold That inflated the price Or that is alleged to have inflated the price Is that what you're saying? So the allegations that the district court And that the government have Largely relied on are these Call center allegations Which again a call center is not illegal Obviously if you're giving out Fraudulent information via a call center That is illegal But that didn't happen until long after this Months and in some cases years after this So there is nothing in this Voluminous trial court record That indicates that any of the free market buyers On September 30th Who were the buyers? We don't know Because they were free market So just like if you or I Went out to buy a share of Nvidia Or Microsoft or whatever It's an anonymous sale Okay but you're saying That there were no call centers For either the unrestricted Or the free trading stock At this time So at this time The record isn't clear I tried to find this Because I would love to have An exact answer for you It appears that the call centers Didn't open until later But there's certainly no evidence That anything fraudulent Was going on at the call centers At this time And it appears That they did not open Until at least later In the fall of that year And again It's totally divorced From these two transactions So to get back to Judge DePauw's earlier question The $10,000 thing is thorny But again A 50-50 isn't enough For a reasonable jury To believe beyond a reasonable doubt Well it is when you view the evidence In the light most favorable to the government That's not what this court said In Morrison your honor If there's multiple reasonable probabilities That's not enough to sustain If there's multiple reasonable But if there's two Then you have to view it In the light most favorable So if it's 50-50 It is Well if you interpret the word multiple To mean more than two Then I guess you're right But I certainly Certainly wouldn't interpret it that way I see that my time is about up So I will Save the rest of my spiel For later Thank you Good afternoon your honors May I please the court Laura Ford on behalf of the United States The evidence in this case On the count 27 Wire fraud count Was sufficient To sustain Spivak's conviction There was fraud from the outset Spivak Recruited Malian Who was barred from the Securities industry To help him With this reverse merger What about I mean what your friend On the other side says Look these were Just stocks on the market That people bought and sold So how is that fraud To sell stock on the market Well with With respect to These wire transfers They were Free trading shares That were represented As being held by HSF Which was a shell company That was controlled by Malian When he was barred From the securities industry There's this agreement That he's going to be Kicking back money To Spivak These In order to buy these shares That he was Selling and then Kicking back through these wires He divided it into Two separate transactions When he bought the He was getting 1.5 million Shares And he split 750 750,000 Each So he would Avoid being an affiliate Which would be problematic Because then They would be restricted shares So that's one Concealment That this is the guy Who is involved In taking this Company public Through the reverse merger He's Buying these shares Through his Wife's company And it's a shell company He's the one That's controlling it And then There's this Concealment That USLG Has an interest in this When They can't have an interest And Spivak Knows that I mean he even Admitted it in SEC testimony In 2019 So what's the best evidence In support of the 10,000 dollars The 10,000 dollars I think is the Chronology You have The You have these The Purchases Of the 1.5 million Shares And You have Communications Where Spivak is asking For money In late August He Tells his His Bookkeeper Vice president Of finance That Malian has 10,000 For us And You see In September There's Communications About When The The Sales go Through That Spivak Is monitoring It And says Stock is Trading And within 10 minutes Of that First trade He's Demanding 50% And You have Testimony About the Transfer You have To tie It to The Conspiracy I think You look At the Chronology That's Less than A week From the 10,000 Transfer It is When you Look at The scheme There was A kick That they Agreed That there Would be 50% Going back To USLG And Spivak Told Loesch That was The Agreement At Page ID 76 22 To 24 And 78 11 To 12 He Also Complained To A Co- Conspirator When He Said He     At The Testimony And The Text And Tie It Back What Ties It  To The Scheme Based On The Fact That The Shares Are Sold And It Is Like Malian Transfers The Money From The Brokerage Account Into The Huntington Account And It  The Next Day That He Is Going      To Exhibit 3B Was When The Discussion About The Time When The Sales Were Occurring In Neither The  Nor The Closing Do They  All Of This I Think That The Chronology Strongly Supports That These Were Part Of This Agreement What Is Your Best Case For The Theory That The Only Evidence We Can Look To Tie This To The Scheme Is The Chronology At This  In Combination With The Fact That This Was In Part Of The  I Mean You Have Spivak In His Own Words Telling Co- Conspirators That This Was The Agreement And Malian Also Testified That Was The Agreement He Also Told Collins That There Was This Kickback Arrangement And So That Combination That This Was The Agreement And Now You See This Is Occurring And There Shouldn't Be Any  On  Because Spivak Could Not Be Involved In This Or USLG So If Someone Is A Large Shareholder It Has To Be A Restricted Share So What It Is Doing Is  It   To   Benefit   And Who Is The Beneficial Owner Of  Okay So Did You Identify Or Did Your Exhibits Identify A  That Chronologically Indicates That That 5000 Was The Proceeds Of That Sale He Was Kicking Out Back Parts Of The Proceeds I Mean That Was The Big Disagreement Between Him And Speedback Is That He Wasn't Sending All The Money That He Was Supposed To Be Sending Back With This Kickback Scheme So You're Saying That This 5000 Might Have Related To A Sale That Was A Month Prior That The  Was Just Trickling In I Would Say He Was Not Eligible To  Those Stocks Until September 22nd Because He Has To Get A Transfer To The Brokerage Account So Around September 22nd That Is When He Was Able To Sell Them And That Was A Month    Was Not Eligible To Those Stocks Until September  Because    Eligible To  Stocks       Until  22nd Because He Was Not Eligible To Those Stocks Until September 22nd Because He Was Not Eligible To Those Stocks Until September 22nd Because    He Was Not    Stocks Until   Because He Was  Eligible To   Until   Because He Was      Not Eligible To Those Stocks Until September  He  Not Eligible To Those Stocks Until  22nd Because He Was Not Eligible To Those Stocks Until   September Because He Was Not Eligible To Those Stocks Until September Because He Was Not Eligible To Those Stocks Until September Because He Was Not Eligible To Those Stocks Until September                          2008-6 that he cites in a reply brief of support do not say that he hired this attorney to withdraw his plea. It very well could have been just to assess his appellate prospects and there had not been a consistent, he did not consistently maintain his innocence given that he was contemplating pleading guilty over a month before and then this is a three something that was hardly surprising to the court and for those reasons we would not think that any decision as to the wire fraud counts would influence the decision on withdrawing his pleas on the phase two counts. Any further questions? Thank you your honors, we would ask the court to please affirm the convictions. So I would like to get back to counts 27 and 28. So it is crucial here to have a wire fraud violation you must have a material misrepresentation or omission. What is the material misrepresentation or omission here? The government has not ever identified it. My friend on the other side did not identify it when she was standing up here. There simply isn't one in the record. So you should correct me if I'm wrong. I thought there was testimony that Malyan wasn't allowed to participate in the securities business and so Malyan still sold unrestricted shares of the company and then sent the money to Spivak and so that's the scheme in part and then he got restricted shares and all that. But on the unrestricted I thought that was the scheme and the money is the wire fraud. But there is still no misrepresentation or omission. In other words, when Malyan is selling these shares. The cover up is. Sorry, go on. When people who are associated entities, their stock is restricted because they have a lot of information and they're not supposed to be trading that stock. I mean there's a time element of it. But they're not supposed to be trading that stock on the open market because they believe that they have an unfair advantage. So if he is truly an associated person and he's selling that stock as if it's unrestricted, I mean factually it was, but then there is a misrepresentation there. So first of all he was not an associated person under the regulations because he wasn't an officer of the company and he never owned a percentage that was in excess of what was allowed under the statute. But more fundamentally we have to be careful. Spivak was. That's the fraud. The fraud is Spivak is having Malyan do it because he can't do it himself. But who was it misrepresented to? No one. Not a soul. Because it was a third party who was marketing and then they would call Malyan and say hey try to sell some of these shares. Not a single stockholder was it ever held out that Malyan was or was not. You're saying it's not fraud to, okay I can't sell my stock during this time period so I give it to Judge Mathis to sell and he sells it. You say that's not a crime. No I am not saying that's not a crime. I'm saying it's not under this statute it's not implicated. It's implicated under a host of other securities laws and a host of other regulations. What you're saying is it isn't a scheme or artifice to defraud. Exactly. Exactly. I mean there were securities fraud counts here. Don't forget that. This isn't a securities fraud count. This is a liar fraud count. And remember it's not that Spivak was hiding that these were his. They were never ever ever his. They were the previous owners and to keep them from going back into the company treasury and then becoming restricted, Malyan bought them. So it's not the case that Malyan was a shell for Spivak. Spivak never owned them and Spivak never got a dollar from the sales. So on both ends there just was no connection there. So even that terminology doesn't work. What do you mean? What's the $10,000 and $5,000? I thought the government's allegation was those were dollars from the sale. From the sale and they went to the company. They went to the company. It was an operating company. None of them went to Spivak. They've played fast and loose sometimes with the terminology. In the briefs they conceded that it all went to USLG not to him. Now sometimes in other circumstances they say Paul but it never went to Paul. I thought it went to an account under Spivak's control. It went to the company account. He was the CEO but there's no evidence anywhere that that was ever misused or abused. Well I understand he's not pocketing it but his interest in the company is so significant that he is benefiting from the money that goes into the company. Well the government wants it both ways. On the free trading they say it's fraudulent because we're giving the money to the company. On the restricted they say it's fraudulent because we're not giving the money to the company. And so that crystallizes the whole situation for you. So I see my time is up but again this is a wire fraud charge. It is not a securities fraud charge. Thank you. Thank you. Case will be submitted and I think that's our final case so we can recess.